Good morning. I'm Eric Martin for the appellant. We would like to reserve two minutes at the end for rebuttal and questions. May it please the court. The appellant is asking the court to reverse immigration court findings that resulted from mistakes in law and depart from precedent regulation and the INA. Regarding the one-child policy claim, the immigration court, the immigration judge failed to find harm in a forced abortion, found punishment was actually grudging compliance and ignored acts of overt defiance that were more than sufficient to qualify as a resistance. Regarding the religious freedom claim, the immigration judge misapplied precedent regarding level of harm. The appellant signed a letter confessing to attending illegal meetings. This indicates that he was prohibited from attending these meetings in the future. The immigration judge finds that he was not. Sotomayor Does it make a difference whether we apply substantial evidence or de novo review here? I think it does. I think that the record is clear and the judge found everything to be correct. Sotomayor Well, I guess what I'm saying is if we review it under substantial evidence, do you lose? If we review it under de novo review, are you more likely to win? I think the judge has made mistakes of law, and I think that it's — I think it's better for our case to — Sotomayor Well, de novo is always going to be better for you. You know that when you've lost. Okay. Sotomayor But if — if it's under substantial evidence, it would have to compel a different result, right, on the past persecution? I think it — I think it compels a different response because the mistakes are legal. If the judge has made a legal error, the judge — that should compel this Court to — Sotomayor So what's the legal error that compels a different result? For which claim, Your Honor? Well, I guess the past persecution on the religious. Right. So whether past persecution is found or not is a legal question. And so that's — that's why we're presenting as illegal. Are there particular cases that you're relying on more than others to say that the evidence compels a conclusion that the religious persecution claim was past persecution? You know, are there — what cases would you point us to to say this case maps onto those so that the evidence compels a conclusion that he was persecuted? I would point to the cases where the — the immigration judge has found — has not — has — that the immigration judge cited because they all show a lower level of harm. And, you know, you can't say that, well, it doesn't show harm because there are all these cases that show less harm. There has to — there has to be a case that is above it on the level of harm. Well, you have Gu, you got Gao, you got all of those. And it seemed that the immigration judge found it closer to one than to other. And you're arguing which case is closest for you, do you think? I think that the — well, I like the dissent in Gu. I think the dissent in Gao is that I didn't like the finding of — Well, that's called a dissent, though. Yeah, I understand that. So I think that it was close. I think that He — He — He — V. Holder is a good case for us because it shows — I mean, it shows that — shows a much lower level of harm than what we saw here. He wasn't even in town when his wife was taken. He came back and they imposed — they imposed a fine on him that he didn't completely — didn't completely pay. And so he was kind of doing this — oh, that's — that's — that's the other claim. I apologize. Let me ask this. How important is it — so there's a beating allegation here when he was detained. He was detained for about six days. That's — For seven days. Seven days. And then there was having to check in with the police on a weekly basis and essentially recount what happened during that week. Did that have a factor in him not being able to practice his religion from having to check in with the police? And is — and should that — how much should that bear on our analysis of past persecution? I think it's an exercise of power on the part of the Chinese government, and it's — and that's sending a clear message that he — that he can't go to these meetings. Otherwise — Well, was he allowed to practice his religion after being detained and forced to sign the confession? Was he allowed to practice his religion after that? He wasn't, because he was told that these meetings were illegal. And the fact that they're illegal indicates that they're — that he shouldn't be going to them. If somebody tells you something is illegal, then you shouldn't be doing it. One thing I have a little problem with here, and — but it's not one that necessarily couldn't be overcome, but I have a problem with your client's son is back — stayed back there, has been allowed to practice religion. I don't seem — even if we agree with you that there was past persecution, which then allows you the rebuttable presumption, I have problem seeing how you're ever going to win on that with the situation with the son and the wife being back there, being allowed to practice religion with — how are you ever going to win? Well, the son was attacked. He was — I mean, how many — the argument by the immigration judge is that it's OK to be attacked once every nine years. No, but now, on future persecution, how are you going to win on that? He's still in danger of being attacked in China right now, according to the country conditions reports. He's — there are people in China that managed to go under the radar for a little while. Is there a 10 percent chance that he'll be attacked in the future? I would — I mean, obviously, our argument is yes, there is. Well, the IJ didn't say the magic word. The IJ sort of said, I don't find future — I don't find the likelihood of future persecution here. But the IJ didn't say, I'm evaluating that under the rebuttable presumption. Do you need to say those magic words? I don't — I don't think you need to say those magic words. I think that everybody is aware of them and is reading — is responding to the case. So I guess I think what Judge Callahan is getting at is, did the IJ consider the claim of future persecution in the alternative as if your client had a presumption that it was objectively reasonable? Or did it just go from the standpoint of there was no past persecution, so there's no presumption of fear of future persecution? I would say that she went with the latter and that she's saying there was no past persecution and, therefore, she has to analyze it under a scheme of future persecution. Would you like to save the balance of your time for rebuttal? Yes, thank you so much. All right, thank you. Good morning. Good morning, Your Honor. May it please the Court, Zachary Hubanks on behalf of the Respondent. Can you keep your — tell us who you are, who you're appearing for, and keep your voice up? You're a little soft-spoken, which is probably nice under many circumstances, but here we all want to hear you. My apologies, Your Honor. May it please the Court, Zachary Hubanks on behalf of the Respondent, the United States Attorney General. The petitioner for review in this case should be denied because nothing in the record compels reversal of the agency's determination that petitioner did not establish eligibility for asylum, withholding of removal, or torture convention protection based on either claim. Starting briefly with the forced abortion claim, petitioner did not demonstrate that he engaged in the over and persistent defiance required to establish that he engaged in other resistance of the coercive population policy. Moreover, even assuming that he did, petitioner did not demonstrate that his fine and workplace demotion was sufficiently severe to constitute persecution under this Court's case law. Moving into his religion — I think his strongest claim is whether there was sufficient evidence for past persecution, and if the Court — and the Court looked at different cases that sort of put the framework here and compared to other ones, and so I guess how do we — your — when you say does it compel, you are assuming a substantial evidence review. Is that correct? Yes, Your Honor. We argued that it was a substantial evidence review. Going back to Elias Zacharias, I don't believe petitioner meaningfully disputed that it is substantial evidence. Even if it's not substantial evidence, just looking at this, this is a case where we are comparing the facts of this case to facts of other cases. It's a highly factual question, as opposed to a purely legal question of what does the statute mean. So that would be a government — So would you agree, though, that our circuit precedent in this area is a little fuzzy on whether substantial evidence or de novo is appropriate? I recognize that there has been some murmurs in recent published and unpublished cases acknowledging this seeming intra-circuit split. My reading of the case law is, again, with Cower and Boer-Sedano. It appeared to me the question of de novo review was whether certain acts as acts themselves would constitute persecution, whereas when we're doing a very factual circumstance like in this case where it's comparing petitioner's case to — is it more like Guvi Gonzalez, John Guavi, Ashcroft, or Jihye Guavi-Sessions? That is essentially a factual or a very factual question, even if it is applying a legal standard, Your Honor. What if the facts are established and not in much dispute, and then the question is, do those established facts rise to the level of persecution? Is that a legal determination or an evidentiary one, in your view? I do not wish to speak to anything binding, but looking at Wilkinson, which just came out from the Supreme Court, in a different immigration context of whether that is a mixed question of factor law, there the Supreme Court did say on a case where the facts aren't in dispute, it's going to be a highly deferential standard review, whatever label it is given. And that's — I believe that's where this case would fall, of the facts are not meaningfully in dispute. It's whether it's more like cases where this Court has found persecution, again, Jeanne Guavi-Ashcroft, or is it more like the case the immigration judge principally relied on of Gu versus Gonzalez? And that's the government's position, is that this case is much closer to — or at least comparable to Gu v. Gonzalez. Well, let me ask this. I was asking your colleague on the other side. So, Gu, there was, I think, detention for three days. And here you have someone detained for six or seven days. They were beaten. There were sleep deprivation allegations. And then you have this surveillance after the fact, where you have to sign a confession saying these were illegal meetings, and you have to check in with the police weekly to report on what happened during that week. Why isn't that closer to the Guo case that where, essentially, it was having to sign and that you would never worship again? Why isn't that equivalent to Guo? Well, in Gu specifically, the petitioner there did sign a confession, and he reported to police, I believe it was four or five weeks until they essentially gave up interest on him and no longer did. So, again, it's a reasonable interpretation of these facts. The immigration judge was permitted to say seven days isn't significantly longer than three versus the first Guo case where the individual was detained twice, for instance. And as this court's case law holds in the more recent Zhihui Guo, that it is a critical point on whether or not the individual signs something either saying that he will no longer be a Christian or something of that effect. Because, again, Guo signed a confession as well. But I guess my question is, isn't it almost essentially the same thing where you're signing a confession that it's illegal to attend church meetings, and now you have to check in with the police weekly to tell us what you're doing during the course of that week? Having been beaten for attending a church meeting, isn't that essentially the same thing as saying you may never practice your Christian faith again? What's the difference between those two scenarios? In practice, I guess. I could certainly see the logic of your question there, Your Honor. But, again, this case is similar to Guo in that both individuals signed a statement admitting that they had done wrong, what they were doing was not legal in China. And then both individuals did testify that the reason they quit attending church services in China was out of essentially a fear of police reprisal. And this court found that distinct in Zhihe Guo. That's one reason this court said Guo and Zhang Guo are distinguishable. Is it significant, as you said, that in Guo, the police lost interest after four or five meetings, and they sort of let it go? Whereas here, I think the record has allegations that the police have continued to show interest in the client. They haven't dropped the matter. In other words, he's still subject to the possibility of surveillance from the police or interest in them. Looking at that, especially in the future forward-looking analysis on the well-founded fear portion, Your Honor, again, Guo had a similar allegation where the police were still interested in him after he arrived in the United States. And Petitioner has that as well. That's in the record. But, again, to Judge Callahan's earlier point, Petitioner's son was involved in this same meeting where the individuals were arrested. His son had a very similar treatment. He was beaten, deprived of sleep, et cetera. And he has since returned to China, where he still practices at a house church. I mean, and that may be a future issue, I think. But would you agree that the IJ did not analyze future persecution in the alternative as if the Petitioner had had a rebuttable presumption? The immigration judge did not explicitly do that legal analysis, no, Your Honor. So in normally our cases, I think if that hasn't happened and if the panel finds that the evidence compels a finding of past persecution, we would send it back for the agency to reconsider the future persecution analysis with the presumption applied. That is my understanding, Your Honor. I'm not aware of a similar case where it essentially reads as if because of the specific facts where the Petitioner's son returned, it sounds something else. It sounds like the agency might have grounds to say even with a rebuttable presumption. But I mean, I guess we would be sort of jumping ahead perhaps to what the agency's own analysis should be. Right, Your Honor. I'm not prepared to say it would necessarily be futile. For instance, walking in this room, I was prepared to say if there was past persecution found, it would certainly, it would need to be remanded to do that proper analysis, even though as we've all acknowledged reading the record, we can guess what the agency may determine here. So you basically, it sounds like your friend on the other side basically said everyone knows that you do the rebuttable presumption here. You know, I asked about the futility of just even assuming that it goes back. There's a lot of evidence that the son's been able to continue to be a Christian, and this was a long time ago, that he's not going to be able to show future persecution. But the cases do say if the wrong lens was used, that it's best to let it go back for the right lens and make that determination. So you're basically saying if the panel were to find it compels persecution, that it should go back for a determination of future persecution in the first instance under the proper standard? I believe so, Your Honor, just because the rebuttable presumption does require a preponderance of the evidence finding, and I don't read the immigration judges making that specific finding. Well, it isn't there specifically, but it's pretty hard to see how a different result would come about. But on the other hand, the cases are kind of specific about that. Yes, Your Honor. I just, at risk of leaning into Shane or Ian saying something the agency didn't say, but I do agree that it appears relatively futile that he could withstand the rebuttable presumption, Your Honor. If there are no further questions, the government would submit on a brief. There do not appear to be additional questions. Thank you for your argument. Okay, so the issue is whether there was a rebuttal made to the presumption of past persecution. I think in, you know, for the future persecution, it's in the record that appellant was also, even if you don't buy that what happened to him rises to the level of persecution. Well, basically what I heard your friend on the other side to say is he's got to win that it doesn't compel past persecution. Otherwise, he agrees with you that it should go back for, to determine for that, for the agency to determine in the first instance. So I feel like your argument is to win or lose on the past persecution. I think that the immigration judge was citing cases that came in lower than the level of persecution in the present case. And so the argument, I think her argument on past persecution fails. And so we should find past persecution in this case. Okay, we don't have any additional questions. Thank you both for your argument. This matter will stand submitted.
judges: THOMAS, CALLAHAN, SANCHEZ